STATE OF NORTH CAROLINA v. JAMES DANIEL FULCHER

No. 7317SC660

(Filed 19 December 1973)

1. Homicide § 20— color slides — illustration of medical testimony

   The trial court in a homicide case did not err in the admission of seven color slides for the purpose of illustrating testimony of the medical examiner.

2. Criminal Law § 34— guilt of another crime — admissibility

   In this homicide case in which the State's evidence tended to show that the victim was beaten to death with a hammer, the court did not err in the admission of evidence that defendant had been convicted for beating deceased with a hammer on another occasion.

3. Homicide § 20— admissibility of hammer found at crime scene

   Although a hammer found at the scene of a homicide was not specifically identified as the murder weapon, the hammer was properly admitted in evidence in defendant's murder trial where the evidence showed that the victim had been brutally beaten, that there were circular bruise marks over the victim's body, and that defendant had previously beaten the victim with a hammer.

APPEAL by defendant from Kivett, Judge, at the 26 March 1973 Session of ROCKINGHAM Superior Court.

This is a criminal action involving an indictment for first-degree murder wherein the State elected to proceed on second-degree murder or a lesser included offense.

The State's evidence showed that on the night of March 28, 1972, the defendant entered the home of the deceased, his girl friend, Ruby Allen Slayton, and found Donnie Caudle who had been with the deceased and others all day. They had been drinking heavily and the deceased was apparently passed out on the bed at the time. The defendant told Caudle, "Don't worry about nothing, sit down, I have caught her with men before." The defendant then sat down at the table and began drinking. Caudle left, leaving the defendant and Ruby Slayton alone.

The next morning the defendant called his foreman, saying he would not come to work that day because of a toothache. The defendant drew out all of his savings that morning and left town. That afternoon, March 29, 1972, the estranged husband of deceased came to the house and found the deceased's

body. She had been brutally beaten. A hammer was found on the refrigerator near the body. There was evidence that two months previously the defendant had beaten the deceased with a hammer. There were uniform circular bruise marks approximately one-half inch in area over the deceased's body. The defendant moved to Baltimore, Maryland, under the name of John Brown. In Baltimore the defendant, on several occasions, told one Terry Hand and Hand's wife and mother that he had killed someone and was wanted for murder. On one occasion the defendant told the Hand family he had killed a man with a whiskey bottle.

In June of 1972 Officer Belluse of the Baltimore Police, who was investigating an assault case, came to the Hand home. The officer was outside calling headquarters when Mr. and Mrs. Hand told Officer Belluse that the defendant had told them he had killed a man. The officer went back inside to talk to Fulcher, and the defendant gave the officer a false name, date of birth, and social security number. The officer went back outside to call in, and the defendant fled out the back door. He was apprehended two doors away under some clothes in a closet. From a verdict of guilty of voluntary manslaughter and a sentence of twenty years, the defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General Rafford E. Jones for the State.*

*Gwyn, Gwyn & Morgan by Melzer A. Morgan, Jr., for the defendant appellant.*

CAMPBELL, Judge.

[1]   The defendant complains that it was error to admit seven color slides used by the medical examiner to explain and illustrate his testimony. Defendant asserts they were too grotesque, inflammatory and repetitious. We are aware of the decisions in *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1968) and *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963). However, we feel that this case is controlled by the general rule that the mere fact that the photographs may be gory, gruesome, revolting or horrible, does not prevent their use by a witness to illustrate his testimony. *State v. Sallie*, 13 N.C. App. 499, 186 S.E. 2d 667 (1972), *cert. denied*, 281 N.C. 316, 188 S.E. 2d 900 (1972) ; *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971) ; *State v. Porth*, 269 N.C. 329, 153 S.E. 2d 10 (1967) ;

State v. Fulcher

*State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948) ; "Admissibility of Photograph of Corpse in Prosecution for Homicide or Civil Action for Causing Death," 73 A.L.R. 2d 769 (1960).

[2] The defendant next assigns as error the admission into evidence of his conviction for the prior beating of the deceased with a hammer after the defendant had caught the deceased with another man. The defendant asserts that this evidence is inadmissible as tending only to show the identity of the accused. The defendant concedes that this evidence of prior crime would be admissible to show *quo animo,* intent, design, guilty knowledge, or scienter, or to make out the *res gestae,* or to exhibit a chain of circumstantial evidence in respect to the matter on trial, when such crimes are so connected with the offense charged as to throw light on one or more of these questions. Cases discussing this concept are *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972) and *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954). We agree with these cases and hold that the evidence was properly admitted.

[3] The defendant next assigns as error the admission into evidence of the hammer found on the scene for that there is no relevant connection between the hammer, the accused, and the decedent. It is true that there was no evidence specifically identifying the hammer as the murder weapon. However, the hammer was found at the scene; there were circular bruise marks over the body of the deceased, and the defendant had previously beaten the deceased with a hammer. The hammer was clearly a part of the chain of circumstances tending to show appellant's guilt. See Stansbury's North Carolina Evidence, Brandis Revision, § 118, p. 356, N. 10, 11 and 12 (1973).

Finally, the defendant assigns as error the denial of his motion for judgment as of nonsuit. Taking the evidence in the light most favorable to the State, we find it to be sufficient.

The charge to the jury is not in the record ; and accordingly, we presume it was adequate, full and correct.

We have reviewed the defendant's other assignments of error and find them to be without merit.

No error.

Judges BRITT and MORRIS concur.